UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DEWAYNE R. THOMPSON,

    Plaintiff,

v.

D. W. BRADBURRY, et al.,

    Defendants.

Case No. 14-cv-01988-HSG (PR)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 16

## INTRODUCTION

Plaintiff, a California prisoner currently incarcerated at California State Prison, Sacramento, filed this *pro se* civil rights action under 42 U.S.C. § 1983 against staff and officials at Pelican Bay State Prison ("PBSP"), where Plaintiff was previously incarcerated. The operative pleading is Plaintiff's First Amended Complaint ("FAC"), which the Court screened on September 15, 2014. The Court found that, liberally construed, the FAC stated a cognizable claim that plaintiff was denied his right to due process in connection with prison disciplinary hearings. The Court ordered service on D.W. Bradbury, PBSP's deputy warden and chief disciplinary officer, as well as PBSP correctional officers B. Flowers, J. Diggle, and D. Short.[1]

Now before the Court is Defendants' motion for summary judgment. Plaintiff has filed an opposition, and Defendants have filed a reply.

## BACKGROUND

The following facts are undisputed unless otherwise noted:

**I.    The Rules Violation Report**

On December 10, 2012, Plaintiff was involved in a fight with another inmate on PBSP's B-

---

[1] The FAC stated a second claim pertaining to conditions Plaintiff experienced in the Security Housing Unit, where he was placed subsequent to the disciplinary hearings. The Court dismissed this claim on the ground that it was unrelated, both in fact and law, to the due process claim. Dismissal was without prejudice to pursuing the claim in a separate action.

1  3 yard.  Bradbury Decl. ¶ 4 & Ex. B (AGO 000020-22); FAC at 6, n.2.[2]  Responding correctional officers used Oleoresin Capsicum ("O.C.") pepper spray to separate Plaintiff from the other inmate.  Bradbury Decl. ¶ 4 & Ex. B (AGO 000022.)  At the time, Plaintiff was on the ground and had the other inmate in a chokehold.  Bradbury Decl. ¶ 4 & Ex. B (AGO 000042).

After the O.C. spray made contact with Plaintiff, he jumped off of the other inmate.  Bradbury Decl. ¶ 4 & Ex. B (AGO 000041-42).  According to Defendants, Plaintiff then grabbed correctional officer T. Farley's chest, and Officer Farley quickly subdued Plaintiff.  *Id.*  According to Plaintiff, he never grabbed Officer Farley, and after "being blinded by pepper spray," he tried "to prone out in a secure spot" away from the other inmate.  FAC at 6, n.2.

Officer Farley later prepared Rules Violation Report ("RVR") number B12-12-0010 charging Plaintiff with Battery on a Peace Officer.  Bradbury Decl. ¶ 5 & Ex. C.

## II.     Plaintiff's First RVR Hearing

On December 14, 2012, Plaintiff was issued a copy of RVR number B12-12-0010 informing him of the charge (battery on Officer Farley) related to the December 10, 2012 incident.  Bradbury Decl. ¶ 5 & Ex. C (AGO 000055).

A mental health clinician determined that Plaintiff did not need a staff assistant to help with his defense under California Code of Regulations, title 15, section 3315(d)(2).  *See* Bradbury Decl. Ex. C (AGO 000059).  An investigative employee ("I.E.") was assigned to gather facts for the hearing on RVR number B12-12-0010.  Bradbury Decl. ¶ 5 & Ex. C (AGO 000060).  Plaintiff did not object to the assignment of the designated I.E.  *See* Bradbury Decl. Ex. C (AGO 000062).  A hearing on the RVR was scheduled for February 17, 2013.  *Id.* (AGO 00060).

Plaintiff refused to attend the February 17, 2013 hearing.  *See* Bradbury Decl. ¶ 6 & Ex. C (AGO 000060.)  Because Plaintiff refused to participate, none of his requested witnesses were called to testify at the hearing.  *See* Bradbury Decl. ¶ 6 & Ex. C (AGO 000060).  The presiding senior hearing officer reviewed both the I.E.'s report and a written statement prepared by Plaintiff,

---

[2] All page numbers used herein refer to those affixed to the top of the page by the court's electronic filing program.

2

in which he attacked the validity of the hearing. *See* Bradbury Decl. Ex. C (AGO 000060-61). The senior hearing officer found Plaintiff guilty of Battery on a Peace Officer under California Code of Regulations, title 15, section 3005(d)(1) and California Penal Code section 242. Bradbury Decl. ¶ 6 & Ex. C (AGO 000062). The hearing officer's decision was based on Officer Farley's incident report and videotape evidence of the fight, in which Plaintiff "can be seen . . . rushing towards and grabbing or striking Officer Farley in the chest." Bradbury Decl. Ex. C (AGO 000061). Based on this guilty finding, Plaintiff lost 150 days of behavioral/work credit, and certain privileges. *Id.*

On April 16, 2013, PBSP's Chief Disciplinary Officer, Defendant Bradbury, ordered RVR number B12-12-0010 reissued and reheard based on the I.E. report's failure to indicate whether all of Plaintiff's witnesses were appropriately screened during the I.E.'s investigation. *See* Bradbury Decl. ¶ 7 & Ex. D. This order vacated the ruling and penalty assessed on RVR number B12-12-0010 before they became final. *See* Bradbury Decl. ¶ 8.

### III.    Plaintiff's Second RVR Hearing

RVR number B12-12-0010 was reissued under log number B13-04-0046 on April 30, 2013. *See* Bradbury Decl. ¶ 9 & Exs. D, E (AGO 000145).

A new I.E. was assigned to investigate RVR number B13-04-0046 and to prepare a new report. Bradbury Decl. ¶ 9 & Ex. E (AGO 000146). Plaintiff provided the I.E. with questions he wanted the I.E. to either answer himself or pose to witnesses of the December 10, 2012 incident (i.e., the responding correctional officers). Bradbury Decl. ¶ 9 & Ex. E (AGO 000152-157). These questions concerned the contents of the video evidence of Plaintiff purportedly grabbing Officer Farley and the details of how that evidence was collected. *See id.* The senior hearing officer for the hearing on RVR number B13-04-0046, Defendant Diggle, screened Plaintiff's questions for the witnesses and found only three of them relevant. *See id.* Plaintiff also introduced a written statement into the I.E. report. *See* Bradbury Decl. Ex. E (AGO 000156). Plaintiff's statement declared that the video evidence against him contained an "optic[al] illusion" in which he appeared to grab Officer Farley. *See id.*

The hearing on RVR number B13-04-0046 was convened on May 29, 2013, under senior

hearing officer Defendant Diggle. Bradbury Decl. Ex. E (AGO 000150). Defendant Diggle denied Plaintiff's request to call each of the officers involved in the December 10, 2012 incident because Plaintiff failed to state how their testimony might differ from the information they already provided to the I.E. *See* Bradbury Decl. ¶ 11 & Ex. E (AGO 000150). After reviewing the incident report and the video evidence, Defendant Diggle found Plaintiff guilty of Battery on a Peace Officer for grabbing Officer Farley on December 10, 2012. *See* Bradbury Decl. ¶ 11 & Ex. E (AGO 000150-151). Plaintiff was penalized 150 days' credit for this offense. *See* Bradbury Decl. ¶ 11 & Ex. E (AGO 000151).

Defendant Diggle's ruling and penalty went to Defendant Bradbury for final review and approval. *See* Bradbury Decl. ¶ 12. On June 28, 2013, Defendant Bradbury ordered RVR number B13-04-0046 reissued and reheard based on the senior hearing officer's failure to procure Officer Farley's attendance at the hearing as required by California Code of Regulations, title 15, section 3315(e)(4). *See* Bradbury Decl. ¶ 12 & Ex. F. This order vacated the ruling and penalty in connection with RVR number B13-04-0046 before they became final. *See* Bradbury Decl. ¶¶ 8, 12.

### IV.   Plaintiff's Third RVR Hearing

RVR number B13-04-0046 was reissued under log number B13-07-0003 on July 29, 2013. *See* Bradbury Decl. ¶ 14 & Ex. G.

The hearing on RVR number B13-07-0003 was convened on August 8, 2013, under senior hearing officer Defendant Short. *See* Bradbury Decl. ¶ 15 & Ex. G (AGO 000205-207). At the hearing, Plaintiff acknowledged timely receipt of the charges and evidence against him. *See* Bradbury Decl. ¶ 15 & Ex. G (AGO 000205). Plaintiff additionally confirmed that he did not need a staff assistant for the hearing. *See id.*

Plaintiff expressed his dissatisfaction that a new I.E. had not been appointed for the hearing and stated that he had three new questions for the I.E. to answer. *See* Bradbury Decl. ¶ 16 & Ex. G (AGO 000205). Defendant Short denied Plaintiff's new questions to the I.E., all of which pertained to the interpretation of the video evidence. *See* Bradbury Decl. ¶ 16 & Ex. G (AGO 000205-206). Defendant Short noted that the video evidence would be reviewed at the

hearing, rendering further evaluation by an I.E. unnecessary. *Id.* Defendant Short also noted that the I.E. report completed for RVR number B13-04-0046 had screened all witnesses and survived review by the Chief Disciplinary Officer. *Id.*

Officer Farley attended the hearing telephonically. Bradbury Decl. Ex. G (AGO 000206). He answered one of Plaintiff's questions before the rest were deemed irrelevant. Bradbury Decl. ¶ 16 & Ex. G (AGO 000206). Plaintiff's request to call additional witnesses and pose additional questions to them was denied by Defendant Short on grounds that the witnesses had already answered all of Plaintiff's relevant questions and that their responses were contained in the I.E.'s report. *See id.*

Defendant Short reviewed multiple angles of the video evidence. *See* Bradbury Decl. Ex. G (AGO 000206-207). Based on that evidence, as well as the December 10, 2012 incident report, Defendant Short found Plaintiff guilty of Battery on a Peace Officer. *See* Bradbury Decl. ¶ 17 & Ex. G (AGO 000206-207).

Plaintiff was assessed 150 days' lost credit in connection with RVR number B13-07-0003. *See* Bradbury Decl. ¶ 17 & Ex. G. PBSP's Acting Chief Disciplinary Officer later reviewed RVR number B13-07-0003 and approved it as final. Bradbury Decl. ¶ 18 & Ex. G (AGO 000204). Plaintiff's credit loss under RVR number B13-07-0003 lengthened his first-term sentence and pushed back his earliest possible release date. Kearns Decl. ¶¶ 6-9.

**V.      Plaintiff's Placement in the Security Housing Unit**

On September 4, 2013, following the third RVR hearing, Plaintiff appeared before PBSP's Internal Classification Committee ("ICC"), presided over by Defendants Bradbury and Flowers. FAC at 8, 11-12; Townsend Decl. ¶ 25 & Ex. L. The ICC imposed an indeterminate term in the Security Housing Unit ("SHU") based on Plaintiff's disciplinary history. *Id.*

**DISCUSSION**

**I.      Standard of Review**

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

5

1   law." *See* Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case.
2   *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is
3   genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving
4   party. *See id.*

5         A court shall grant summary judgment "against a party who fails to make a showing
6   sufficient to establish the existence of an element essential to that party's case, and on which that
7   party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an
8   essential element of the nonmoving party's case necessarily renders all other facts immaterial."
9   *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial
10  burden of identifying those portions of the record that demonstrate the absence of a genuine issue
11  of material fact. *Id.* The burden then shifts to the nonmoving party to "go beyond the pleadings
12  and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on
13  file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324
14  (citing Fed. R. Civ. P. 56(e) (amended 2010)).

15        For purposes of summary judgment, the court must view the evidence in the light most
16  favorable to the nonmoving party; if the evidence produced by the moving party conflicts with
17  evidence produced by the nonmoving party, the court must assume the truth of the evidence
18  submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).
19  The court's function on a summary judgment motion is not to make credibility determinations or
20  weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc. v.*
21  *Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

22        A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is
23  based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder*
24  *v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint
25  as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746,
26  plaintiff stated under penalty of perjury that contents were true and correct, and allegations were
27  not based purely on his belief but on his personal knowledge). Here, plaintiff's verified FAC is
28  considered along with the evidence in his opposition (Docket #19) in evaluating the motion for

summary judgment.

## II. Analysis

Prisoners retain their right to due process subject to the restrictions imposed by the nature of the penal system. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply. *See id.* But the Due Process Clause requires certain minimum procedural protections where serious rules violations are alleged, the power of prison officials to impose sanctions is narrowly restricted by state statute or regulations, and the sanctions are severe. *See id.* at 556-57, 571-72 n.19.

*Wolff* established five constitutionally mandated procedural requirements for disciplinary proceedings. First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." *Id.* at 564. Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]." *Id.* Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)). Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 566. And fifth, "[w]here an illiterate inmate is involved [or] the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or . . . to have adequate substitute aid . . . from the staff or from a[n] . . . inmate designated by the staff." *Id.* at 570.

The Due Process Clause requires only that prisoners be afforded those procedures mandated by *Wolff* and its progeny; it does not require that prisons comply with their own, more generous procedures. *See Walker v. Sumner*, 14 F.3d 1415, 1419-20 (9th Cir. 1994), *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). A prisoner's right to due process is violated "only if he [is] not provided with process sufficient to meet the *Wolff* standard."

*Id.* at 1420.

Plaintiff claims that Defendants Diggle and Short deprived him of due process during successive RVR hearings by denying his requests for witnesses, ruling his questions to witnesses and investigators irrelevant, and reviewing allegedly exculpatory evidence in a biased manner. FAC at 6-7, 11. Plaintiff further claims that Defendant Bradbury denied him due process by ruling his questions to witnesses and investigators irrelevant and by failing to appoint a new investigative employee for a rehearing of Plaintiff's rules violation for Battery on a Peace Officer. FAC at 7. Plaintiff claims that Defendants Flowers and Bradbury denied him due process at his ICC hearing, at which plaintiff was given an indefinite SHU term following the third RVR hearing. FAC at 11-12. Specifically, Plaintiff contends that Defendants Flowers and Bradbury did not adhere to the guidelines of California Code of Regulations, title 15, sections 3375(f) and 3339(b), which require notice of the hearing and provide procedural safeguards to inmates retained for administrative reasons after the expiration of a definite term or terms of confinement for disciplinary reasons. *See* FAC at 8; Pl.'s Opp'n. Mot. Summ. J. ("Opp.") at 4; Cal. Code Regs. tit. 15, §§ 3375(f), 3339(b).

Defendants argue that they are entitled to summary judgment on the following grounds: (1) Plaintiff failed to exhaust his administrative remedies with respect to his claims against Defendants Bradbury, Diggle, and Flowers; (2) Plaintiff's claim against Defendant Short is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); (3) Defendants provided Plaintiff with all the process due to him under the United States Constitution and state law; and (4) assuming their actions are found to be unconstitutional, it would not have been clear to a reasonable official that such conduct was unlawful and that therefore they are entitled to qualified immunity.

**A.     Failure to Exhaust**

The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Although previously within the discretion of the district court, exhaustion in prisoner cases

8

covered by § 1997e(a) is now mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The PLRA exhaustion requirement requires "proper exhaustion" of all available administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Proper exhaustion requires using all steps of an administrative process and complying with "deadlines and other critical procedural rules." *Id.* at 90. Administrative remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter*, 534 U.S. at 524. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. *Id.*; *Booth v. Churner*, 532 U.S. 731, 741 (2001). Exhaustion is a prerequisite to all inmate lawsuits pertaining to prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *Porter*, 534 U.S. at 532.

The exhaustion requirement of the PLRA is intended to serve a number of purposes, including providing an opportunity for corrections officials to address complaints internally, deterring frivolous lawsuits, and creating an administrative record allowing courts to evaluate the relative merits of claims. *See Porter*, 534 U.S. at 525. "The primary purpose of a grievance," however, "is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009). The level of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *see also Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) ("To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations").

In *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), the Ninth Circuit held that a failure to exhaust under § 1997e(a) should be raised by a defendant as an "unenumerated Rule 12(b) motion." Thereafter, however, in *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014), the Ninth Circuit overruled *Wyatt* in part and held that a motion for summary judgment is the appropriate procedural device for pretrial determination as to exhaustion. *Albino*, at 1169. Following the decision in *Albino*, a defendant may raise the issue of exhaustion in either (1) a motion to dismiss pursuant to Rule 12(b)(6), in the rare event the failure to exhaust is clear on the face of the complaint, or (2) a motion for summary judgment. *Id.* As set forth in *Albino*, "an unenumerated

1 motion under Rule 12(b) is not the appropriate procedural device for pretrial determination of
2 whether administrative remedies have been exhausted." *Id.* at 1168. The Court next turns to the
3 administrative remedies available to California inmates.

4 The State of California provides its inmates the right to administratively appeal
5 "departmental policies, decisions, actions, conditions, or omissions that have a material adverse
6 effect on the welfare of inmates and parolees." Cal. Code Regs. tit. 15, § 3084.1(a) (2014). In
7 order to exhaust available administrative remedies within this system, a prisoner must generally
8 proceed through three levels of appeal: (1) a written appeal on a CDC 602 inmate appeal form
9 describing the specific issue under appeal and the relief requested, *id.* § 3084.2; (2) a second-level
10 appeal to the institution head or designee, *id.* § 3084.7(b) and (d)(2); and (3) a third-level
11 ("director's level") appeal to the Secretary of the California Department of Corrections and
12 Rehabilitation, conducted by a designee, *id.* § 3084.7(c) and (d)(3). A final decision at the
13 director's level satisfies the exhaustion requirement under the PLRA. *See id.* at § 3084.7(d)(3);
14 *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010).

15 Here, Defendants argue they are entitled to summary judgment because Plaintiff failed to
16 exhaust his administrative remedies with respect to his claims against Defendants Bradbury,
17 Flowers, and Diggle. Plaintiff contends that he exhausted his administrative remedies with respect
18 to his claims against Bradbury and Flowers on April 15, 2014 and refers the Court to appeal log
19 number PBSP-13-03783. *See* Opp. at 2. Plaintiff contends that he exhausted his administrative
20 remedies with respect to his claims against Diggle on December 11, 2013 and refers the Court to
21 appeal log number PBSP-13-02683. *See id.*

**1. Defendants Bradbury and Flowers**

23 With regard to Defendants Bradbury and Flowers, the parties submit evidence showing the
24 following:

25 On September 4, 2013, following the third RVR hearing, Plaintiff appeared before PBSP's
26 Internal Classification Committee ("ICC"), presided over by Defendants Bradbury and Flowers.
27 FAC at 8, 11-12; Townsend Decl. Ex. L. The ICC imposed an indeterminate term in the Security
28 Housing Unit ("SHU") based on Plaintiff's disciplinary history. *Id.*

1    Plaintiff submitted appeal number PBSP-13-02873 to the first level of review on
2    September 8, 2013. Townsend Decl. ¶ 25 & Ex L. In it, Plaintiff grieved that his due process
3    rights were violated when the ICC imposed an additional SHU term on him without sufficient
4    notice of the ICC's hearing. *Id.* The appeal bypassed the first level of review and was granted in
5    part on October 8, 2013 at the second level, which ordered the ICC to hold a new hearing on
6    Plaintiff's SHU status. *Id.*

7    Plaintiff was given a new ICC hearing on October 23, 2013. Townsend Decl. Ex. N. The
8    ICC acted to retain him in Administrative Segregation pending his transfer to his indeterminate
9    term in the SHU. *Id.*

10   Plaintiff submitted appeal number PBSP-13-03783 to the first level of review on
11   November 10, 2013. Townsend Decl. ¶ 27 & Ex. N. In it, he sought reassignment from PBSP's
12   SHU to a general population housing unit. *Id.* Appeal number PBSP-13-03783 bypassed the first
13   level and was denied by the second level on December 23, 2013. *See id.* Plaintiff appealed to the
14   third level, which denied appeal number PBSP-13-03783 on April 15, 2014, on grounds that no
15   violation of due process or department policy had occurred when Plaintiff was assigned to the
16   SHU. *See id.*

17   Defendants argue that appeal number PBSP-13-03783 only grieved issues involving
18   plaintiff's ICC hearing and therefore did not exhaust plaintiff's claims against Defendants
19   Bradbury and Flowers relating to the RVR hearings. Plaintiff does not dispute that he failed to
20   submit a grievance as to his due process claims against Defendants Bradbury and Flowers relating
21   to the RVR hearings. Nor does he show that "there is something in his particular case that made
22   the existing and generally available administrative remedies effectively unavailable to him."
23   *Albino*, 747 F.3d at 1172.

24   Accordingly, defendants' motion for summary judgment for lack of exhaustion will be
25   granted as to the due process claims against Defendants Bradbury and Flowers relating to the RVR
26   hearings.[3] Because the undisputed facts show that plaintiff grieved his ICC claims against

---

[3] Indeed, all parties appear to agree that Defendant Flowers was not involved in the RVR hearings.

11

Defendants Bradbury and Flowers all the way to the director's level of review, Defendants' motion for summary judgment for lack of exhaustion will be denied as to the due process claims against Defendants Bradbury and Flowers relating to the ICC hearings.

### 2. Defendant Diggle

With regard to Defendant Diggle, the parties submit evidence showing the following:

Plaintiff submitted appeal number PBSP-13-02683 to the first level of review on August 25, 2013. Townsend Decl. ¶ 24 & Ex. K. In it, he challenged the validity of the guilty finding associated with RVR number B13-07-0003 on grounds that no new investigative report was prepared for the RVR rehearing, that Defendant Short denied Plaintiff's questions to witnesses, and that the video evidence used against him could exonerate him if professionally enhanced. Townsend Dec. ¶ 24 & Ex. K (AGO 000335, 000337). Plaintiff further requested an interview in order to plead his case. *Id.* Appeal number PBSP-13-02683 bypassed the first level of review per California Code of Regulations, title 15, section 3084.7(a)(4) and was granted in part by the second level on September 27, 2013, because officials accommodated Plaintiff's request for an interview. Townsend Decl. ¶ 24 & Ex. K. The second level of review denied Plaintiff's request for the invalidation of RVR number B13-07-0003, finding no error with the hearing. Townsend Decl. ¶ 24 & Ex. K (AGO 000339-341). Plaintiff appealed this denial to the third level of review on October 1, 2013. *See* Townsend Decl. Ex. K (AGO 000336-338). In the appeal to third level, Plaintiff, for the first time, grieved that Defendant Diggle had "counted" his questions irrelevant. *See id.* Appeal number PBSP-13-02683 was denied at the third level of review on December 11, 2013. Townsend Decl. Ex. K (AGO 000333-334).

The Court has reviewed the record of Plaintiff's Appeal No. PBSP-13-02683. It is undisputed that the appeal grieved Plaintiff's complaints relating to his third RVR hearing, at which Defendant Short acted as the senior hearing officer. The Court agrees with Defendants, however, that no reasonable jury could find the appeal put Defendant Diggle on notice with respect to the due process claim now asserted against him in relation to the second RVR hearing. Most notably, Plaintiff specifically describes the issue being grieved as relating to his "recent hearing." Townsend Decl. Ex. K (AGO 000335). At that point, August 25, 2013, his most recent

12

hearing was his third and final hearing, i.e., the hearing on RVR number B13-07-0003 held on August 8, 2013.  He goes on to describe alleged violations that only occurred in this third hearing.  Specifically, he claimed that: (1) he should have been given a new I.E. because he had new questions pertaining to the incident, and (2) the senior hearing officer erroneously denied him the right to ask all the questions he had for Officer Farley.  Finally, as defendants point out, the name Diggle only appeared at the time Plaintiff appealed his grievance to the third level.  Under CDCR's appeal process, in order to properly appeal an issue against one or more individual staff members, an inmate must name "all staff member(s) involved" and "describe their involvement in the issue" at the time he files his initial 602 inmate appeal form.  *See* 15 C.C.R. § 3084.2 (a)(3).  As a result of Plaintiff's failure to mention Diggle at the time he initiated Appeal No. PBSP-13-02683, Plaintiff did not "provide the level of detail required by the prison's regulations," *Sapp*, 623 F.3d at 824, and therefore did not properly exhaust his administrative remedies.  *See Ngo*, 548 U.S. at 90.  In any event, Plaintiff's reference to Diggle is a single line tacked on to the very end of Plaintiff's appeal from the second-level denial, in which plaintiff states in totality, "J. Diggle violating my right by counting questions irrelevant."  Townsend Decl. Ex. K (AGO 000338).  Even then, Plaintiff does not appear to be challenging Diggle's actions directly, but rather challenging Short's decision to rely on the record of Plaintiff's prior hearing, over which Diggle presided.  In sum, Plaintiff fails to meet his burden to come forward with evidence showing that he submitted a grievance as to his due process claims against Defendant Diggle relating to the RVR hearings.  Nor does he show that "there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  *Albino*, 747 F.3d at 1172.

Accordingly, Defendants' motion for summary judgment for lack of exhaustion will be granted as to the due process claims against Defendant Diggle.

### B. *Heck* Favorable Termination Rule

Defendants contend that Plaintiff's due process claim against Defendant Short is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  Specifically, Defendants argue that Plaintiff's claim against Short may not proceed because Plaintiff has not successfully invalidated the good-time

credit forfeiture that he received as a result of Short's finding him guilty of Battery on a Peace Officer at the third RVR hearing.

*Heck* held that, in order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a Section 1983 plaintiff must prove that the conviction or sentence has been reversed or otherwise set aside or called into question. *Id.* at 486-87. *Heck* also bars a claim for using the wrong *Wolff v. McDonnell* procedures in a disciplinary hearing that resulted in the deprivation of time credits if "the nature of the challenge to the procedures [is] such as necessarily to imply the invalidity of the judgment." *Edwards v. Balisok*, 520 U.S. 641, 645 (1997). A Section 1983 claim based on allegations that plaintiff was completely denied the opportunity to put on a defense and that there was deceit and bias on the part of the decisionmaker, for example, necessarily implies the invalidity of the punishment imposed and is barred by *Heck*. *Id.* at 646-47. *Heck*'s rationale bars a claim for damages for harm caused by the unconstitutional deprivation of good-time credits because such a claim necessarily calls into question the lawfulness of the plaintiff's continued confinement, insofar as it implicates the duration of the plaintiff's sentence. *See Sheldon v. Hundley*, 83 F.3d 231, 233 (8th Cir. 1996).

A judgment in favor of Plaintiff here would necessarily imply the invalidity of the disciplinary proceedings and forfeiture of time credits against him. *See Heck*, 512 U.S. at 486-87. *Edwards* is on point. In *Edwards*, the plaintiff alleged that he was denied due process because the hearing officer did not allow him to call witnesses who possessed exculpatory evidence, and was biased and lied about the nonexistence of the witness statements at issue. *See Edwards*, 520 U.S. at 646-47. The Court held that plaintiff's due process claim was barred by *Heck*. Here, Plaintiff alleges that he was denied due process at the third disciplinary hearing because Defendant Short refused to call Plaintiff's witnesses to testify. FAC at 7, 11. He further alleges that Defendant Short deprived him of a fair hearing by reviewing the alleged exculpatory evidence in a biased manner. *Id.* As a result, Plaintiff contends he was wrongly found to have committed battery on a peace officer and assessed 150 days of time credits. As in *Edwards*, Plaintiff's due process claim, if established, would necessarily imply the invalidity of the proceedings and forfeiture of time

14

credits against him. *See also Ramirez v. Galaza*, 334 F.3d 850, 858-59 (9th Cir. 2003) (noting that *Heck* applies where expungement of disciplinary finding is likely to accelerate prisoner's eligibility for parole); *Nonnette v. Small*, 316 F.3d 872, 875 (9th Cir. 2002) ("There is no question in this case that [plaintiff] seeks damages for the unconstitutional deprivation of the good-time credits themselves, and that if he succeeded in showing that the prison officials acted contrary to all of the evidence, a finding in his favor would imply the invalidity of the revocation . . . .").

Accordingly, Plaintiff's due process claim against Defendant Short must be dismissed without prejudice. *See Trimble v. City of Santa Rosa*, 49 F.3d 583, 585 (9th Cir. 1995) (proper course for claims barred by *Heck* is dismissal without prejudice to refiling if the conviction is later invalidated); *Sheldon*, 83 F.3d at 234 (holding same in relation to prison disciplinary hearing).

### C.     Remaining Claims

As noted above, Defendants alternatively argue that they are entitled to summary judgment on the merits of Plaintiff's due process claims and that, even assuming their actions are found to be unconstitutional, they are nonetheless entitled to qualified immunity. Because the Court has already found in favor of Defendants on the RVR claims, it need not address these alternative arguments with respect to said claims.

As discussed above, however, Plaintiff's due process claims against Defendants Flowers and Bradbury relating to the ICC hearings remain. Defendants fail to address these claims in their motion for summary judgment. Defendants assert that these claims were dismissed in the Court's September 15, 2014 order of service. *See* Mot. Summ. J at 1:20-21. This is incorrect. Although the Court dismissed Plaintiff's claims relating to his condition of confinement in the SHU, the Court found the due process claims cognizable and expressly stated in its order of service that "defendants may be responsible for [Plaintiff's] continued detention in the SHU." Docket 7 at 3. Plaintiff contends that his continued detention in the SHU was imposed by Defendants Bradbury and Flowers in connection with his ICC hearings and alleges he was denied due process at said hearings. Accordingly, the Court directs Defendants to address the remaining due process claims pursuant to the scheduling order set forth below.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Defendants' motion for summary judgment is hereby GRANTED IN PART and DENIED IN PART as follows:

    a. Summary judgment is GRANTED in favor of Defendant Diggle.

    b. Plaintiff's claims against Defendant Short are DISMISSED without prejudice to filing a new action if the prison disciplinary finding in RVR number B13-07-0003 is ever invalidated.

    c. Summary judgment is GRANTED in favor of Defendants Bradbury and Flowers with respect to Plaintiff's due process claims relating to his RVR hearings.

    d. Summary judgment is DENIED with respect to Plaintiff's due process claims against Defendants Bradbury and Flowers relating to his ICC hearings.

2. In order to expedite the resolution of this case, the Court orders as follows:

    a. No later than **91 days** from the date this order is filed, Defendants shall file a motion for summary judgment addressing the merits of the remaining claim that Plaintiff was denied due process in connection with the ICC hearings. A motion for summary judgment also must be accompanied by a *Rand* notice so that Plaintiff will have fair, timely and adequate notice of what is required of him in order to oppose the motion. *Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012) (notice requirement set out in *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), must be served concurrently with motion for summary judgment).

If Defendants are of the opinion that this case cannot be resolved by summary judgment, Defendants must so inform the Court prior to the date the motion is due.

    b. Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the Court and served upon Defendants no later than **28 days** from the date the motion is filed. Plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment.

    c. Defendants shall file a reply brief no later than **14 days** after the date the opposition is filed. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion.

3. Plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact; that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in [current Rule 56(c)], that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc) (App. A).

(The *Rand* notice above does not excuse Defendants' obligation to serve said notice again concurrently with a motion for summary judgment. *Woods*, 684 F.3d at 939).

4. The Clerk shall terminate Defendants Diggle and Short from the docket in this action. The Clerk is further directed to correct the spelling of Defendant Short's and Defendant Bradbury's names on the court docket by substituting "Short" for "Shorts" and "Bradbury" for "Bradburry."

This order terminates Docket No. 16.

**IT IS SO ORDERED.**

Dated: 6/2/2015

HAYWOOD S. GILLIAM, JR.
United States District Judge

17