UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEWAYNE R. THOMPSON,<br><br>Plaintiff,<br><br>v.<br><br>D. W. BRADBURY, et al.,<br><br>Defendants. | Case No. 14-cv-01988-HSG (PR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S REMAINING DUE PROCESS CLAIM**<br><br>Re: Dkt. No. 27 |

**INTRODUCTION**

Plaintiff, a California prisoner currently incarcerated at California State Prison, Sacramento, filed this *pro se* civil rights action under 42 U.S.C. § 1983 against staff and officials at Pelican Bay State Prison ("PBSP"), where Plaintiff was previously incarcerated. The operative pleading is Plaintiff's First Amended Complaint ("FAC"), which the Court screened on September 15, 2014. The Court found that, liberally construed, the FAC stated a cognizable claim that Plaintiff was denied his right to due process in connection with Rules Violation Report ("RVR") hearings and Internal Classification Committee ("ICC" or "committee") hearings. The Court ordered service on Defendant Bradbury, PBSP deputy warden and chief disciplinary officer, and Defendants Flowers, Diggle and Short, PBSP correctional officers.

Defendants moved for summary judgment on Plaintiff's RVR-based due process claims on February 13, 2015. On June 2, 2015, the Court issued its Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment, which granted summary judgment to Defendants on all of Plaintiff's RVR-based claims and terminated Defendants Diggle and Short from the action.

The Court did not terminate proceedings as to the un-briefed claim against Defendants Bradbury and Flowers arising out of the ICC hearings, but instead directed Defendants Bradbury

1   and Flowers to file a second motion for summary judgment addressing it.  Defendants' motion for
2   summary judgment on Plaintiff's remaining due process claim is now before the Court.  Plaintiff
3   has filed an opposition, and Defendants have filed a reply.  For the reasons that follow, the motion
4   will be granted.

## BACKGROUND

6   The following facts are undisputed unless otherwise noted:

7   **I.   Disciplinary Write-Up Resulting in Referral to the ICC**

8   As discussed in the Court's prior summary judgment order, in December 2012, Plaintiff
9   received a disciplinary write-up—RVR number B12-12-0010—charging him with battery on a
10  peace officer.  Plaintiff was found guilty of the charge following an August 8, 2013 disciplinary
11  hearing, which was held after the disposition of two earlier hearings had been vacated.

12  Based on this offense, the hearing officer imposed a 150-day credit forfeiture and referred
13  Plaintiff to PBSP's ICC for consideration of a possible 12-month determinate term in the security
14  housing unit ("SHU").  *See* Bradbury Decl. ¶ 9.  On August 23, 2013, Plaintiff received a final
15  copy of the RVR-hearing disposition related to his battery charge, which referred him to the ICC.
16  Dkt. No. 16-32 at 5.

17  On August 29, 2013, Plaintiff received notice that at the hearing, the ICC would determine
18  whether to retain him in administrative segregation and whether to impose a 12-month SHU term
19  for his battery on a peace officer.  Bradbury Decl. ¶ 14 & Ex. D.  On September 3, 2013, Plaintiff
20  was further informed that at the hearing, the committee would also consider the possible
21  imposition of an indeterminate SHU term.  Bradbury Decl. ¶ 15 & Ex. E.

22  **II.  September Committee Hearing**

23  On September 4, 2013, Plaintiff attended the committee hearing on his classification
24  status.  Bradbury Decl. ¶ 16 & Ex. F.  The hearing was presided over by Defendants Bradbury and
25  Flowers.  The notes from the meeting state that Plaintiff "expressed his understanding of the basis
26  for the ICC action and agreed with the action."  *Id.*  The committee noted that Plaintiff was found
27  guilty of battery on a peace officer and that the "offense warrant[ed] a SHU term."  *Id.*  Giving
28  Plaintiff credit for time he already served in the administrative segregation unit while his battery

2

1  charge was pending, the committee recommended Plaintiff's continued retention in administrative
2  segregation pending the expiration of the 12-month SHU term he was already serving. That term
3  was due to expire on September 10, 2013, just 6 days after the hearing. *Id.* Next, the committee
4  deemed Plaintiff a threat to institutional security based on his "extensive disciplinary history"—
5  including four previously imposed SHU terms for violence and indecent exposure. *Id.* Noting
6  that it was unsafe to release Plaintiff to the general population, the committee recommended
7  Plaintiff's continued retention in administrative segregation on indeterminate SHU status pending
8  his transfer to the SHU at California State Prison, Sacramento. *Id.* The committee's
9  recommendations were then transmitted to the Classification Service Unit of the California
10 Department of Corrections and Rehabilitation ("CDCR") for review and approval. Bradbury Decl.
11 ¶¶ 12, 16-17.

12 Plaintiff challenged the indefinite SHU term imposed by the committee through inmate
13 appeal number PBSP-13-02873. *See* Dkt. No. 16-19. While Plaintiff's appeal was pending, on
14 October 2, 2013, a CDCR official endorsed him for transfer to the California State Prison,
15 Sacramento SHU. Bradbury Decl. ¶¶ 17, 19 & Ex. G.

16 On October 8, 2013, appeal number PBSP-13-02873 was partially granted at the second
17 level of review on grounds that the committee failed to give Plaintiff the notice or staff assistance
18 required by state law. Dkt. No. 16-19 at 3. In its appeal decision, the second-level reviewer also
19 vacated the September hearing recommendations and ordered the committee to hold a new hearing
20 on Plaintiff's indeterminate SHU term. Dkt. No. 16-19 at 4.

21 **III.    October Committee Hearing**

22 On October 18, 2013, Plaintiff received notice of his upcoming classification hearing, its
23 scheduled date, and the committee actions under consideration. *See* Bradbury Decl. ¶ 21 & Ex. H.
24 The notice informed Plaintiff that he met the criteria for an indeterminate SHU term based on
25 enumerated disciplinary offenses that demonstrated Plaintiff was a threat to institutional security.
26 *See id.* Plaintiff was assigned a staff assistant on October 21, 2013, two days before the
27 committee hearing. *See* Bradbury Decl. ¶ 22 & Ex. I.
28 On October 23, 2013, the committee held a hearing on Plaintiff's housing and custody

3

status. *See* Bradbury Decl. ¶ 21 & Ex. I. The hearing was again presided over by Defendants Bradbury and Flowers. Plaintiff appeared at the hearing, expressed his understanding of the proceedings, and gave a statement on his own behalf. Bradbury Decl. ¶ 23 & Ex. I. After the committee reviewed Plaintiff's "extensive disciplinary history," it concluded that Plaintiff's release into the general population would be "unsafe at this time." *Id.* The committee then reaffirmed Plaintiff's indeterminate SHU term as well as his retention in administrative segregation pending his transfer to the California State Prison, Sacramento SHU. *Id.* Plaintiff was transferred to California State Prison, Sacramento on October 24, 2013. Bradbury Decl. ¶ 24 & Ex. J. Once there, he challenged the committee's actions during the October hearing in an unsuccessful inmate appeal. *See* Dkt. No. 16-21.

**DISCUSSION**

**I.     Standard of Review**

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e) (amended 2010)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Here, Plaintiff's verified FAC is considered along with the evidence in his opposition (dkt. no. 31) in evaluating the second motion for summary judgment.

**II.    Analysis**

As noted above, the Court has already addressed the issue of whether Plaintiff was afforded due process in connection with his disciplinary hearings. The question currently before the Court is whether Defendants complied with due process in the ICC hearings that followed.

The Ninth Circuit has held that California statutes and prison regulations create a liberty interest in freedom from administrative segregation and has spelled out the process due before a prisoner may be segregated for administrative reasons. *See Toussaint v. McCarthy*, 801 F.2d 1080, 1098, 1100 (9th Cir. 1986), *overruled in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). *Toussaint* requires prison officials to comply with the following procedures when they initially determine whether a prisoner is to be segregated for administrative reasons: (1) they must hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated, (2) the prisoner must be informed of the charges against him or the reasons segregation is being considered, and (3) the prisoner must be allowed to present his views. *See*

5

*Toussaint*, 801 F.2d at 1100. Due process does not require detailed written notice of charges, representation by counsel or counsel-substitute, an opportunity to present witnesses, a written decision describing the reasons for placing the prisoner in administrative segregation or disclosure of the identity of any person providing information leading to placement of a prisoner in administrative segregation. *See id.* at 1100-01. *Accord Wilkinson v. Austin*, 545 U.S. 209, 228-29 (2005) (determining that prisoners are constitutionally entitled only to the informal, non-adversary procedures set forth in *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1 (1979), and *Hewitt v. Helms*, 459 U.S. 460 (1983)[1], prior to assignment to "supermax" facility).

In *Superintendent v. Hill*, 472 U.S. 445, 455 (1985), the Supreme Court held that disciplinary proceedings do not satisfy due process requirements unless there is "some evidence" in the record to support the findings of the prison disciplinary board. The Ninth Circuit requires that "some evidence" also support a decision to place an inmate in segregation for administrative reasons. *See Toussaint*, 801 F.2d at 1104. The standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced. *Id.* at 1105 (citing *Hill*, 472 U.S. at 455). Ascertaining whether the standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. *See id.* Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached. *See id.*

The Court finds that Plaintiff has failed to raise a triable issue as to whether Defendants violated his right to due process in imposing an indeterminate SHU term. To survive a summary judgment motion, Plaintiff must raise a triable issue of fact as to whether Defendants denied him the procedural protections under *Toussaint*. Viewing the evidence in the light most favorable to Plaintiff, there is no triable issue because Defendants did not deprive him of any of the constitutional protections under *Toussaint*.

Plaintiff claims that Defendants imposed an indeterminate SHU term without meeting "the five requirements under *Wolff v. McDonnell*, 418 U.S. 539 (1974)." Dkt. No. 31 at 2.

---

[1] *overruled in part by Sandin v. Conner*, 515 U.S. 472 (1995).

6

1  Specifically, Plaintiff argues that he was deprived of his right to call witnesses or present evidence
2  in his defense. *Id.* at 3. It appears that Plaintiff is confusing the greater procedural protections to
3  which he would be entitled for a disciplinary matter with the minimum protections under
4  *Toussaint* for administrative segregation.[2] The hearings at issue here were not for a disciplinary
5  matter, but were non-adversarial hearings for the purposes of determining if administrative
6  segregation was appropriate. As such, *Toussaint* requires that Defendants hold the hearing within
7  a reasonable time; that Plaintiff be informed of the charges against him or the reasons segregation
8  is being considered; and that Plaintiff be allowed to present his views. *See Toussaint*, 801 F.2d at
9  1100. With respect to the first requirement, it is undisputed that Plaintiff was given notice and a
10 hearing prior to being placed in the SHU. Bradbury Decl., Exs. D, H. Second, Plaintiff was
11 clearly informed of the reasons that segregation was being considered: the August 29, 2013 and
12 October 18, 2013 notices informed him that he met the criteria for a SHU term based on his
13 disciplinary history, which included four prior SHU terms for rules violations. Bradbury Decl.,
14 Exs. D, E, H. Last, Plaintiff was permitted to present his views at the hearing, and he was
15 informed of his right to do so in advance. Bradbury Decl., Exs. D, E, F, H, I.

16 Furthermore, there is no dispute with respect to the sufficiency of the record supporting the
17 decision of the ICC to retain Plaintiff in the SHU for an indeterminate term. Plaintiff does not
18 challenge the fact that he suffered the four specific rules violations upon which the ICC based their
19 decision. *See id.* Consequently, there was clearly "some evidence" to support the ICC's decision.
20 *See Toussaint*, 801 F.2d at 1104.

21 Accordingly, Defendants Bradbury and Flowers are entitled to summary judgment as a
22 matter of law on Plaintiff's remaining due process claim.[3]

---

[2] Disciplinary segregation cannot be imposed without due process, i.e., without the procedural requirements of *Wolff v. McDonnell*, 418 U.S. 539 (1974). *Wolff* established five constitutionally-mandated procedural requirements for disciplinary proceedings: (1) a written notice of the charges to enable the inmate to prepare a defense, *id.* at 564; (2) at least 24 hours after the notice to allow the inmate to prepare for the hearing, *id.*; (3) a written statement as to the evidence relied on and reasons for the disciplinary action, *id.*; (4) the right to call witnesses and present documentary evidence in his or her defense, *id.* at 566; and (5) assistance of a fellow inmate or staff where inmate is illiterate or the issues are complex, *id.* at 570.

[3] Defendants also claim they are entitled to summary judgment on the basis of qualified immunity,

**CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment (dkt. no. 27) on Plaintiff's remaining due process claim is GRANTED. The Clerk shall enter judgment in favor of Defendants and close the file.

**IT IS SO ORDERED.**

Dated: 6/6/2016

*Haywood S. Gilliam Jr.*
HAYWOOD S. GILLIAM, JR.
United States District Judge

---

but, because the Court has found no constitutional violation, a qualified immunity analysis is not necessary.